UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| ABAYOMI TABITI, on behalf of plaintiff and a class, | ) ) | |
| Plaintiff, | ) ) | Case No. 13 C 7198 |
| v. | ) ) ) | Judge Joan B. Gottschall |
| LVNV FUNDING, LLC; RESURGENT CAPITAL SERVICES, L.P., and ALEGIS GROUP LLC, | ) ) ) ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Abayomi Tabiti moves the court pursuant to Federal Rule of Civil Procedure 23 to enter an order finding that this Fair Debt Collection Practices Act ("FDCPA") action may proceed as a class action against Defendants LVNV Funding, LLC ("LVNV"); Resurgent Capital Services, L.P. "(Resurgent"); and Alegis Group, LLC ("Alegis") (collectively, "Defendants") [107]. For the reasons set forth below, the court finds that the proposed class meets the requirements of Rule 23(a) and (b)(3) and grants Plaintiff's motion.

**I.  BACKGROUND**

The following allegations are drawn from Plaintiff's First Amended Complaint ("FAC") [79] and Plaintiff's memorandum in support of his renewed motion for class certification [120]: Plaintiff is an individual who had one or more accounts with Chase Bank USA, N.A ("Chase"). (FAC, Dkt. 79, ¶¶ 6, 30)  LVNV is a debt-collector who purchases consumer debt from Chase and other financial institutions and then attempts to collect on these debts by means of collections lawsuits filed in Illinois courts.  (*Id*., ¶¶ 9, 11-12, 14)  Resurgent operates a collection agency and collects debts on behalf of LVNV.  (*Id*., ¶17)  All actions taken in the name of

LVNV actually were taken by Resurgent pursuant to a written agreement and power of attorney. (*Id*., ¶ 21) Alegis is the general partner of Resurgent. (*Id*., ¶ 26) Plaintiff was named in a lawsuit filed by LVNV, but the suit was dismissed after he retained a lawyer on March 13, 2013. (*Id*., ¶¶ 31, 39) Attached to LVNV's suit against Plaintiff was an affidavit (the "Affidavit") stating that Defendants are in possession of business records indicating that Defendants have been assigned "the right to collect the purchased balance owing of $10,463.51 plus any additional accrued interest." (Mem. in Supp. Class Cert. ("Pl.'s Mem."), Dkt. 120, Appendix B) In Plaintiff's case, the alleged unpaid balance was $10,463.51, but when Defendants filed suit, they also sought almost $2,092.70 in interest, "plus continuing interest on the outstanding principal balance at a rate of 0.5% per annum." (*Id*., Appendix A) Plaintiff claims that the Affidavit violates the FDCPA, 15 U.S.C. § 1692 et seq.—which prohibits unfair or unconscionable collection methods, including false, deceptive, or misleading statements—because Chase's assignment of Plaintiff's debt to Defendants pursuant to a Credit Card Account Purchase Agreement specifically excluded all post charge-off interest from the assignment. (Dkt. 120, Appendix E)

Plaintiff seeks class certification on behalf of: (a) all natural persons with Illinois addresses; (b) to whom Defendants provided an affidavit in the form represented by Appendix B [the Affidavit]; (c) concerning an alleged debt purportedly obtained from Chase; (d) where the definition of "Unpaid balance" in the Chase [Credit Card Account Purchase Agreement] includes the statement "excluding post charge-off interest;" (e) where such affidavit was provided on or before October 8, 2012 (one year prior to the filing of this action); and (f) on or before October 28, 2013 (20 days after the filing of this action." (Pl.'s Reply, Dkt. 129 at 6) In support of certification, Plaintiff directs the court's attention to a stipulation the parties entered into on May 13, 2016 ( the "Stipulation"), which states as follows:

> Defendants agree that there are 123 individuals whose debts were acquired by Defendants from Chase under identical terms and conditions as those terms and conditions in the Purchase and Sale Agreement that Defendants have produced as that which is related to Tabiti's account. Defendants also agree that in opposing class certification, Defendants will not argue that there are individual factual issues among the remainder of the putative class related to the Purchase and Sales Agreements associated with the 123 class members and that which was produced as related to the Tabiti account.

*See* Stipulation, Dkt. 101.

In opposing class certification, Defendants present two arguments against certification, both of which are based on Plaintiff's failure to demonstrate that he is an adequate class representative. First, Defendants claim that Plaintiff does not possess the same interests and did not suffer the same injury as potential members because his debt was incurred for business purposes, while the FDCPA addresses only non-business debt. Second, Defendants maintain that Plaintiff's claims are time-barred because they were not brought within the one-year statute of limitations applicable under the FDCPA to the alleged violation.

## II. REQUIREMENTS FOR CLASS CERTIFICATION

Federal Rule of Civil Procedure 23 allows class certification when the proposed class satisfies all of the requirements of Rule 23(a) and at least one of the requirements of Rule 23(b). *Wal–Mart, Inc. v. Dukes,* —U.S. —, 131 S.Ct. 2541, 2548, 180 L.Ed.2d 374 (2011). The court need not accept the allegations in the complaint as true. *Szabo v. Bridgeport Mach., Inc.,* 249 F.3d 672, 675 (7th Cir. 2001). Under *Wal–Mart,* the party seeking class certification must demonstrate with proof, at the class-certification stage, that the requirements of Rule 23 are satisfied. The court must engage in a "rigorous analysis" touching on the merits of the underlying claim. *Id.* at 2551–52.

Rule 23(a) lists the following prerequisites for class certification: "(1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact

common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class." Fed.R.Civ.P. 23(a); *Wal–Mart,* 131 S.Ct. at 2548. These four requirements "effectively limit the class claims to those fairly encompassed by the named plaintiff's claims." *Wal–Mart,* 131 S.Ct. at 2550 (internal quotation marks omitted).

Plaintiff requests certification pursuant to Rule 23(b)(3), which applies when "the questions of law or fact common to class members predominate over any questions affecting only individual members, and [when] a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

### A. Rule 23(a)

#### 1. *Numerosity*

Rule 23(a)(1) requires that the proposed class be large enough to make joinder impracticable. Here, the parties have stipulated that there are 123 class members. Accordingly, the court finds that the numerosity requirement is met. *See Fletcher v. ZLB Behring LLC,* 245 F.R.D. 328, 335 (N.D. Ill. 2006) ("[C]ourts in this circuit have concluded that 40 or more class members is generally sufficient to fulfill the numerosity requirement.").

#### 2. *Commonality*

The commonality inquiry focuses on whether a class-wide proceeding will "generate common answers apt to drive the resolution of the litigation." *Wal–Mart,* 131 S.Ct. at 2551. It is similar to the predominance requirement of Rule 23(b)(3), but "the predominance criterion is far more demanding." *Amchem Prods., Inc. v. Windsor,* 521 U.S. 591, 623–24, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997). As Plaintiff must demonstrate not only commonality but predominance to

prevail on this motion, the court will elaborate on the question of commonality below, as part of the Rule 23(b)(3) analysis.

### 3. *Typicality*

Typicality requires that the named plaintiff's claims be typical of those of the class at large, rather than premised on varying practices or diverging courses of conduct by the defendants. *See Retired Chi. Police Ass'n v. City of Chi.,* 7 F.3d 584, 596–98 (7th Cir.1993). Here, Plaintiff alleges that all of the putative plaintiffs received from Defendants an affidavit that is virtually identical to the one received by Plaintiff, in an attempt to collect on a consumer debt, and that each of the class members was subject to the same provision in the Credit Card Account Purchase Agreement. Defendants have stipulated that they will not allege individual factual issues among Plaintiff and the putative class relative to the Credit Card Account Purchase Agreement. Thus, the court finds that Plaintiff's claims are typical of the class, to the extent that all the class members' claims are based on the theory that Defendants sent them virtually identical affidavits associated with an attempt to collect on a debt, and that Defendants, by means of this affidavit, seeks post charge-off interest.

### 4. *Adequacy*

The adequacy factor requires that the named plaintiff's claims and interests not conflict with those of the class, that the class representatives have sufficient interest in the outcome of the case, and that class counsel be experienced and competent. *Retired Chi. Police Ass'n,* 7 F.3d at 598. Plaintiff's counsel has significant experience litigating class action lawsuits. (Pl.'s Mem., Dkt. 120, App'x D. (Decl. of Daniel Edelman) As for the Plaintiff, he states that he understands the obligations of being the class representative and that he has an identity of interest with the putative class members because each of them received the same lawsuit and affidavit as he did.

However, Defendants argue that Plaintiff is an inadequate class representative because he does not possess the same interests as the proposed class and does not share the same injury. Specifically, Defendants contend that Plaintiff's debt falls outside of the purview of the FDCPA because only non-business debts are covered by the statute. Plaintiff's debts, Defendants contend, were incurred for business purposes related to his taxi business, including charges to Autozone, New Star Auto Repair, and Carfax. In support, Defendants reference particular billing statements showing automobile-related charges, although they do not provide these statements for the court to review.

In response, Plaintiff asserts that Defendants have identified the wrong accounts and have confused Plaintiff's Chase checking account, ending in 9635, with the Chase credit card account at issue in this case, ending in 9027. A review of the relevant documentation (supplied by Plaintiff in his reply brief), reveals that the account identified in Plaintiff's complaint, and on the allegedly offending Affidavit, pertains to the credit card ending in 9027, and not to a checking account ending in 9635. Further, a close review of the checking account statements ending in 9635 indicates that Plaintiff did make charges to this account for car-related services and products. But this fact is of no relevance, because the checking account ending in 9635 is not at issue in this case. No such charges are evident when reviewing the documentation submitted with respect to the 9027 account. Accordingly, Defendant's argument is without merit.

Defendants' second argument against adequacy is grounded in timeliness. The FDCPA specifies that suits must be brought "within one year from the date on which the violation occurs. 15 U.S.C. § 1692k(d); *Randolph v. IMBS, Inc.,* 368 F.3d 726, 730–31 (7th Cir. 2004); *Hill v. Wells Fargo Bank, N.A.*, 946 F. Supp. 2d 817, 822 (N.D. Ill. 2013). Defendants assert that the one-year statute of limitations commenced in 2011, when Plaintiff was sent collection letters to

his home address.[1] In further support, Defendants provide the declarations of Lance Black (the President of Northland Group, Inc. ("Northland")) and Brian Bowers (the CEO of Financial Recovery Services, Inc. ("FRS")), indicating that in April and December of 2011, respectively, these non-party companies each sent Plaintiff a collection notice relating to his account ending in 9027.[2] Plaintiff, on the other hand, argues that the operative event for purposes of triggering the statute of limitations was the filing of the collection suit, along with the associated Affidavit, on October 30, 2012. Since this action was filed on October 8, 2013, which was within one year of the filing of the collections lawsuit, Plaintiff argues that the action is timely.

Under either scenario, the court finds that the action is timely. Even if the court were to use the 2011 collection letters as the triggering event, the continuous violation doctrine renders Plaintiff's action timely. *See Hockenhull v. Law Office of Howard Lee Schiff, P.C.*, C.A. No. 12-415 S, 2012 WL 6525504 (D.R.I. Dec. 13, 2012) (applying continuous violation doctrine where some of the conduct occurred within the limitations period and some occurred outside of it); *Devlin v. Law Offices Howard Lee Schiff, P.C.,* Civil Action No. 11–11902–JGD, 2012 WL 4469139, at *7 (D.Mass. Sept. 25, 2012) (applying the continuous violation doctrine where "the conduct complained of constitutes a continuing pattern and course of conduct as opposed to unrelated discrete acts. If there is a pattern, then the suit is timely if the action is filed within one year of the most recent date on which the defendant is alleged to have violated the FDCPA")

---

[1] Defendants maintain that these letters were sent to Plaintiff's valid address at the time, and that neither letter was returned to sender as undeliverable.

[2] Defendants' response memorandum indicates that LVNV assigned the account ending in 9027 to Northland in April 2011, and that the account "subsequently was assigned" to FRS. (Resp. Mem., Dkt. 122, at 2-3) However, the Black and Bowers Declarations indicate that LVNV assigned Plaintiff's account ending in 9027 to Northland in April 2011 and to FRS in December 2011. (Dkt. 22, Black Decl., ¶ 10; Bowers Decl., ¶ 10) The court fails to understand how this account can be assigned by LVNV to two different companies without any kind of intervening event, but clarification on that point is not necessary to the court's disposition today.

(quoting *Joseph v. J.J. MacIntyr Cos.*, 281 F. Supp. 2d 1156, 1161 (N.D. Cal 2003)). In this case, from the record before it, the court concludes that the actions underlying this lawsuit (namely, the filing of the lawsuit and the Affidavit), is part of a continuous pattern and course of conduct associated with the attempt to collect on the 9027 account. Accordingly, Plaintiff's lawsuit is timely.[3]

Defendant's adequacy arguments are without merit and the court finds that Plaintiff is an adequate representative for the class.

### B. Rule 23(b)(3)

Under Rule 23(b)(3), the court may certify a class only if (1) questions of law or fact common to the class members predominate over questions affecting individual class members, and (2) a class action is superior to other methods of adjudicating the claims.

#### 1. *Predominance*

The Seventh Circuit recently explained the predominance requirement of Rule 23(b)(3): Rule 23(b) (3)'s predominance requirement is satisfied when common questions represent a significant aspect of a case and can be resolved for all members of a class in a single adjudication. Or, to put it another way, common questions can predominate if a common nucleus of operative facts and issues underlies the claims brought by the proposed class. If, to make a prima facie showing on a given question, the members of a proposed class will need to present evidence that varies from member to member, then it is an individual question. If the same evidence will suffice for each member to make a prima facie showing, then it becomes a common question. Individual questions need not be absent. The text of Rule 23(b) (3) itself

---

[3] To the extent Defendants argue that Plaintiff's First Amended Complaint exceeds the scope of the court's minute order dated October 9, 2015 [78] by making allegations based on the existence of an affidavit, the court finds that Defendants must brief this issue by separate motion, and not in a response to Plaintiff's motion for class certification.

contemplates that such individual questions will be present. The rule requires only that those questions not predominate over the common questions affecting the class as a whole. *Messner v. Northshore Univ. HealthSystem,* 669 F.3d 802, 815 (7th Cir.2012) (internal citations, alterations, and quotation marks omitted). The more common issues predominate, the more desirable a class-action lawsuit will be. *Klay v. Humana, Inc.,* 382 F.3d 1241, 1269 (11th Cir.2004). The fact that individual assessment of damages will be necessary should plaintiffs prevail does not preclude a finding that common issues predominate. *See Wal–Mart,* 131 S.Ct. at 2558 (stating that it is "clear that individualized monetary claims belong in Rule 23(b)(3)"). The court notes that in some cases, the need for "mini trials" as to individualized questions has rendered class certification inappropriate. For example, a fellow district court held that individualized questions predominated in a case where the defendant "introduced evidence that it elicited consent from every recipient that was not already a customer." *G .M. Sign, Inc. v. Brink's Mfg. Co.,* No. 09 C 5528, 2011 WL 248511, at *8 (N.D. Ill. Jan.25, 2011). Based on this evidence, the court feared "it would have to engage in a classmember-specific inquiry to determine whether each recipient did indeed give permission or have an established business relationship with Defendant at the pertinent time." *Id.*

In this case, Plaintiff maintains that questions of law and fact common to the class predominate over individualized questions, and that the common issue in this case is whether Defendants filed a lawsuit against him and the potential class members that contained an affidavit seeking to recover post-charge off interest. Defendants, for their part, have not produced evidence indicating that the court would have to engage in class-member specific inquiry; to the contrary, the Stipulation states that in opposing class certification, Defendant will NOT argue that there are individual factual issues among the remainder of the putative class

9

related to the Chase Credit Card Account Purchase Agreements. (Stip., Dkt. 101) Although this case may prove to present individual questions, Defendants have not highlighted any of them. Accordingly, the court concludes that, based on the evidence presently before it, common issues predominate and can be handled within the framework of a class action. *See Bridgeview Health Care Ctr. Ltd. v. Clark,* No. 09 C 5601, 2011 WL 4628744, at *5 (N.D.Ill. Sept.30, 2011).

## 2. *Superiority*

The court also considers the Rule 23(b)(3) factors in evaluating whether a class action is a superior method to adjudicate the claims at issue: "(A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action." Fed.R.Civ.P. 23(b)(3). Courts in this district have held that proceeding as a class is a superior method of adjudicating TCPA violations, and that Congress did not expressly preclude class complaints under the TCPA. *See, e .g., Reliable Money Order,* 281 F.R.D. at 339; *Bridgeview,* 2011 WL 4628744, at *6. Here, individual plaintiffs would be unlikely to pursue an action on their own. There is no indication that other class members have commenced litigation against the defendants, and managing the class action does not appear to present any special difficulties. The court finds that a class action is the superior method for the adjudication of the class members' claims.

### C. Class Definition

Plaintiff defines the class as: (a) all natural persons with Illinois addresses; (b) to whom Defendants provided an affidavit in the form represented by Appendix B; (c) concerning an alleged debt purportedly obtained from Chase; (d) where the definition of "Unpaid balance" in

the Chase purchase agreement includes the statement "excluding post charge-off interest;" (e) where such affidavit was provided on or before October 8, 2012 (one year prior to the filing of this action); and (f) on or before October 28, 2018 (20 days after the filing of this action." (Pls.' Mot., Dkt. 107 at 1)  The court adopts the proposed class definition as amended and certifies the class as defined above.

## IV. CONCLUSION

Plaintiff's motion to certify a class is granted. The court appoints Plaintiff Abayomi Tabiti as class representative and Plaintiff's counsel, Edelman, Combs, Latturner & Goodwin, L.L.C., as class counsel.

Date:   January 17, 2017

/s/
Joan B. Gottschall
United States District Judge