UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| ABAYOMI TABITI, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 13-CV-7198 |
| v. | ) | |
| | ) | Honorable Joan B. Gottschall |
| LVNV FUNDING, LLC, et al. | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

This is a certified class action under the Fair Debt Collection Practices Act ("FDCPA"),

15 U.S.C. § 1692 *et seq.*, brought by plaintiff, Abayomi Tabiti ("Tabiti" or "plaintiff"), against

LVNV Funding, LLC ("LVNV"); Resurgent Capital Services, LP ("Resurgent"); and Alegis

Group, LLC ("Alegis") (collectively "defendants"). *See Tabiti v. LVNV Funding, LLC*, 2017

WL 168176 (N.D. Ill. Jan. 17, 2017) (certifying class), reconsideration denied by unpublished

order, ECF No. 138 (May 16, 2017). Cross motions for summary judgment are before the court.

Tabiti moves for summary judgment as to defendants' liability. Defendants seek summary

judgment dismissing this action in its entirety.

### I. LEGAL STANDARD AND OBJECTIONS

Except where otherwise noted, the court draws the undisputed facts from the parties'

Local Rule 56.1 statements of undisputed material facts ("Local Rule 56.1 fact statements").[1]

---

[1] In the interest of brevity, only one citation is provided when a fact appears more than once in the parties' cross statements. *See Am. Safety Cas. Ins. Co. v. City of Waukegan*, 776 F. Supp. 2d 670, 678 n.1 (N.D. Ill. 2011) (adopting same practice).

1

Defendants object to some of the paragraphs of plaintiff's Local Rule 56.1 fact statements primarily on the ground that plaintiff relies on discovery material from other cases.

### A. Summary Judgment Standard

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute as to any material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In resolving summary judgment motions, "facts must be viewed in the light most favorable to, and all reasonable inferences from that evidence must be drawn in favor of, the nonmoving party [but] only if there is a 'genuine' dispute as to those facts." *Scott v. Harris*, 550 U.S. 372, 380 (2007); *Blasius v. Angel Auto., Inc.*, 839 F.3d 639, 644 (7th Cir. 2016) (citing *Cairel v. Alderden*, 821 F.3d 823, 830 (7th Cir. 2016)).

The party seeking summary judgment has the burden of establishing that there is no genuine dispute as to any material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Modrowski v. Pigatto*, 712 F.3d 1166, 1168 (7th Cir. 2013) (explaining that Rule 56 "imposes an initial burden of production on the party moving for summary judgment to inform the district court why a trial is not necessary") (citation omitted). After "a properly supported motion for summary judgment is made, the adverse party must "go beyond the pleadings and set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 255 (quotation omitted); *see also Modrowski*, 712 F.3d at 1169 (stating party opposing summary judgment "must go beyond the pleadings (*e.g.,* produce affidavits, depositions, answers to interrogatories, or admissions on file), to demonstrate that there is evidence upon which a jury could properly proceed to find a verdict in her favor") (citations and quotations omitted).

2

Summary judgment is warranted when the nonmoving party cannot establish an essential element of its case on which it will bear the burden of proof at trial. *Kidwell v. Eisenhauer*, 679 F.3d 957, 964 (7th Cir. 2012).

The issues raised in the pending motions largely overlap. The court applies the procedural requirements of Rule 56 separately to each cross motion. *See Hotel 71 Mezz Lender LLC v. Nat'l Ret. Fund*, 778 F.3d 593, 603 (7th Cir. 2015). Each movant and nonmovant "must individually satisfy the requirements of Rule 56." *United Transp. Union v. Ill. Cent. R.R. Co.*, 998 F. Supp. 874, 880 (N.D. Ill. 1998) (citing *Chicago Truck Drivers, Helpers and Warehouse Workers Union (Indep.) Pension Fund v. Kelly*, 1996 WL 507258, *3 (N.D. Ill. Sept. 4, 1996)). Thus, which party must "go beyond the pleadings and affirmatively. . .establish a genuine issue of material fact" depends on which party will bear the burden of proof on an issue at trial. *Santaella v. Metro. Life Ins. Co.*, 123 F.3d 456, 461 (7th Cir. 1997) (citing *Celotex*, 477 U.S. at 324). This means that the court adopts "a dual, 'Janus-like' perspective" on cross motions aimed at the same claim or defense. *Hotel 71*, 778 F.3d at 603 (citing *Shiner v. Turnoy*, 29 F. Supp. 3d 1156, 1160 (N.D. Ill. 2014)). On one motion, the court views the facts and inferences in the light most favorable to the nonmovant; but if summary judgment is not warranted, the court changes tack on the cross motion and gives the unsuccessful movant "all of the favorable factual inferences that it has just given to the movant's opponent." *Id.* (citing *R.J. Corman Derailment Servs., LLC v. Int'l Union of Operating Eng'rs, Local Union 150*, 335 F.3d 643, 647–48 (7th Cir. 2003)).

**B. Defendants' Objections to Plaintiff's Statement of Undisputed Material Facts**

Local Rule 56.1 creates a procedure for presenting facts that a party contends are material at summary judgment. Specifically, Local Rule 56.1(a)(3) requires a party moving for summary

judgment to submit "a statement of material facts as to which the moving party contends there is

no genuine issue and that entitle the moving party to judgment as a matter of law." *Cracco v.

Vitran Express, Inc.*, 559 F.3d 625, 632 (7th Cir. 2009) (quoting L.R. 56.1(a)(3)). Each

paragraph of the movant's facts must include "specific references to the affidavits, parts of the

record, and other supporting materials relied upon to support the facts set forth in that

paragraph." L.R. 56.1(a). The "[f]ailure to submit such a statement constitutes grounds for

denial of the motion." *Id.* Local Rule 56.1(b)(3)(B) requires the nonmoving party to submit a

response to each statement of fact provided by the movant, "including, in the case of any

disagreement, specific references to the affidavits, parts of the record, and other supporting

materials relied upon." The nonmoving party may also present a separate statement of additional

facts "consisting of short numbered paragraphs, of any additional facts that require the denial of

summary judgment, including references to the affidavits, parts of the record, and other

supporting materials relied upon." L.R. 56.1(b)(3)(C). "All material facts set forth in the

statement required of the moving party will be deemed to be admitted unless controverted by the

statement of the opposing party." *Id.* Similarly, "[i]f additional material facts are submitted by

the opposing party. . .the moving party may submit a concise reply in the form prescribed in that

section for a response." L.R. 56.1(a). If the movant fails to respond properly to the opposing

party's statement of additional facts, those facts will be deemed admitted. *Id.*

In their response to Tabiti's Local Rule 56.1(a)(3) fact statements, defendants repeatedly

"object" or argue that documents and deposition transcripts cited by Tabiti were obtained during

discovery in another case, but plaintiff did not produce the document or disclose the witness

during discovery in this case. *See* Defs.' Resp. to Pl.'s Statement of Material Facts ("SUMF") ¶¶

8, 9, 10, 11, 12, 20, 21, 22, 23, 40, 47, 48, ECF No. 171; *id.* ¶¶ 11, 32, 33 (raising objection but

not disputing fact). In support of each objection, defendants cite Federal Rule of Civil Procedure 37(c) and cases interpreting it for the general rule that material not disclosed during discovery must be excluded unless the failure to disclose is substantially justified or harmless. *E.g., id.* ¶ 20 (citing Fed. R. Civ. P. 37(c)); *In re Thomas Consol. Indus., Inc.*, 456 F.3d 719, 726 (7th Cir. 2006) (quoting *Musser v. Gentiva Health Servs.*, 356 F.3d 751, 758 (7th Cir. 2004)). In her reply, plaintiff argues that raising the objections in this way violates this court's standing order on motions for summary judgment (available from the court's website).

Tabiti correctly reads the standing order, which specifies how factual assertions, arguments about the reasonableness of inferences to be drawn from cited materials, and other legal arguments should be distributed among the Local Rule 56.1 fact statements, responses, and legal memoranda. Regarding responses to a Local Rule 56.1(a)(3) fact statement, the order (p. 2) states "Local Rule 56.1(b)(2) requires a memorandum of law. This is the document in which all argument should be contained." "All" means what it says. By objecting in a response to a Local Rule 56.1(a)(3) response, the party resisting summary judgment deprives the moving party of the chance to reply to the objection. Addressing legal issues in a Local Rule 56.1(b)(2) memorandum of law or in a separate motion to strike avoids these potential pitfalls by permitting full adversary presentation. *See Rivera v. Guevara*, 319 F. Supp. 3d 1004, 1038 (N.D. Ill. 2018) (Gottschall, J.).

The instant briefing and fact statements exemplify the problems created by incorporating legal argument into Local Rule 56.1 responses. For one thing, the arguments are not developed. A party's "'skeletal' arguments may be properly treated as waived." *Hernandez v. Cook Cty. Sheriff's Office*, 634 F.3d 906, 913 (7th Cir. 2011) (citing *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991)). To assess the disclosure issues raised by defendants, four factors must be

considered: "(1) the prejudice or surprise to the party against whom the evidence is offered; (2) the ability of the party to cure the prejudice; (3) the likelihood of disruption to the trial; and (4) the bad faith or willfulness involved in not disclosing the evidence at an earlier date." *Tribble v. Evangelides*, 670 F.3d 753, 760 (7th Cir. 2012) (quoting *David v. Caterpillar, Inc.*, 324 F.3d 851, 857 (7th Cir. 2003)). Defendants discuss none of the four factors in response to plaintiff's Local Rule 56.1(a)(3) fact statements in their accompanying memorandum of law; indeed the memorandum of law does not mention the objections or Rule 37(c) at all. *See* Defs.' Resp., ECF No. 170. Plaintiff's reply brief does not expressly discuss the factors either. Defendants do not develop an argument in support of their objections, much less discuss these factors, in their memorandum of law in opposition to plaintiff's motion for summary judgment, ECF No. 170.

For their part, plaintiffs argue in their reply that any failure to disclose is harmless because defendants were aware of the depositions taken in other cases and because they produced the documents to which they now object. Reply 1–6, ECF No. 185. But the court cannot consider plaintiff's contentions because arguments made for the first time in a reply must also be deemed waived. *See, e.g.*, *Hernandez*, 634 F.3d at 913 (citing *United States v. Diaz*, 533 F.3d 574, 577 (7th Cir. 2008)). By failing to follow this court's standing order to develop legal arguments adequately in its legal memoranda and making their objections in skeletal fashion in their response to plaintiff's fact statement, defendants have waived any Rule 37(c)(1) arguments they might have made.[2] The court therefore disregards defendants' objections to plaintiff's Local Rule 56.1 fact statements and deems the paragraphs to which defendants object to be undisputed. *Compare Ciomber v. Coop. Plus, Inc.*, 527 F.3d 635, 639, 643 (7th Cir. 2008) (party filed

---

[2] The court implies nothing about whether the evidence to which defendants object may be admissible at a later stage of these proceedings.

6

separate motion developing Rule 37(c)(1) argument for excluding expert report at summary judgment), *with Fenje v. Feld*, 301 F. Supp. 2d 781, 814–15 (N.D. Ill. 2003) (deciding, on motion to strike, that failure to disclose was harmless because the party was aware of the witness).

Defendants also contend that certain paragraphs of plaintiff's Local Rule 56.1(a)(3) fact statement are irrelevant or that the materials cited by plaintiff do not support all or part of the proposition. *See* Defs.' Resp. to Pl.'s SUMF ¶¶ 2, 5, 6, 15, 28, 30, 31, 33, 47. To the extent necessary, the court addresses these objections *infra*. *Rivera*, 319 F. Supp. 3d at 1018.

## II. Factual and Procedural Background

### A. The Charge-Off and Sale of Tabiti's Debt

In October 2008, Tabiti defaulted on personal credit card debt he owed to Chase Bank USA, N.A. ("Chase"). Defs.' Ans. to Am. Compl. ¶ 5, ECF No. 83; Pl.'s Statement of Material Facts ("SUMF") ¶¶ 49, 50, ECF No. 164.[3] His debt went into default. Pl.'s SUMF ¶ 50. The last account statement Chase issued to Tabiti was dated October 15, 2008. *Id.* ¶ 51; *see also* Pl.'s Resp. to Defs.' SUMF ¶ 9, ECF No. 183[4] (summarizing earlier account statements issued by Chase). Chase charged off the balance on Tabiti's account on October 31, 2008[5]. Pl.'s Resp. to Defs.' SUMF ¶ 10. The crux of Tabiti's FDCPA claims concern the accumulation of interest in the two years following Chase's charge-off on October 31, 2008.

Nearly two years later, on August 25, 2010, Chase sold Tabiti's debt to Sherman Originator III, LLC ("Sherman Originator III"). Pl.'s Resp. to Defs.' SUMF ¶¶ 11, 14. The "original placement balance" of the debt matched the balance Chase charged-off nearly two

---

[3] The redacted version of Pl.'s SUMF can be found at ECF No. 165.
[4] The redacted version of Pl.'s Resp. to Defs.' SUMF can be found at ECF No. 189.
[5] Charge-off is an accounting term. When an account receivable is charged off, it is "treat[ed] as a loss or expense because payment is unlikely." Black's Law Dictionary 283 (10th Ed. 2014).

years earlier. *Compare id.* ¶ 11, *with id.* ¶ 10. That is, no additional interest was added to the "balance" between the date Chase charged-off the debt and the date Chase sold the debt to Sherman Originator III. Pl.'s SUMF ¶¶ 47–48. It was Chase's policy at the time not to charge interest after charging off a debt like Tabiti's. *Id.*

A purchase and sale agreement ("purchase agreement"), Pl.'s App. 16, ECF No. 164-16, dated July 26, 2010, between Chase and Sherman Originator III governed the sale of Tabiti's account. *See* Pl.'s Resp. to Defs.' SUMF ¶ 12. The parties dispute the legal consequences of the purchase agreement. It contained the following definition and language:

> "Unpaid Balance" means, as to any Account, the total outstanding unpaid balance, as shown on Seller's books and records as of the last Business Day prior to the File Creation Date (including all amounts due in respect of purchases, cash advances, finance charges, payments and credit adjustments, late fees, return check charges, overlimit fees and all other applicable fees and charges) excluding post charge-off interest.
>
> . . . .
>
> (a)    Purchaser represents and warrants to Seller that Purchaser's primary purpose in purchasing Charged-off Accounts is to attempt legal collection of the Unpaid Balances owed on such Charged-off Accounts and is not to commence an action or proceeding against Cardholders obligated under such Charged-off Accounts. Notwithstanding the preceding, the Purchaser retains the right to pursue an action or proceeding in the event that reasonable legal collections are not successful in securing a satisfactory payment on the account.
>
> (b)    Subject to the terms and conditions of this Agreement, on the Closing Date, Seller will sell, assign and transfer to Purchaser and Purchaser shall purchase all of Seller's rights, title and interest in and to eligible Charged-off Accounts (which Accounts shall be listed either on a diskette or a spreadsheet to be provided to Purchaser) at a Purchase Price determined by multiplying the total Unpaid Balances of the Charged-off Accounts as of the File Creation Date being sold by Purchase Price Percentage.

Pl.'s App. at 16, ECF No. 164-16.

8

**B. Transfer of Debt and Defendants' Relationships**

Sherman Originator III transferred "all ownership rights" first to another entity, Sherman Originator, LLC, which in turn transferred them to LVNV. Pl.'s SUMF ¶¶ 52–54; Pl.'s Resp. to Defs.' SUMF ¶ 14, ECF No. 189. "LVNV acquires ownership rights in debts owed to others." Defs.' Resp. to Pl.'s SUMF ¶ 11, ECF No. 171. It claims to have no employees. Defs.' Resp. to Pl.'s SUMF ¶ 16 (deemed admitted due to lack of response).

LVNV outsources the collection of debts it owns to Resurgent, which does not own any debts. Defs.' Resp. to Pl.'s SUMF ¶¶ 18–19, 29, 33 (describing power of attorney issued to Resurgent). Resurgent "directed the collection activity" at issue here. Defs.' Resp. to Pl.'s SUMF ¶ 32.

LVNV and Resurgent "are affiliated with Sherman Financial Group." Defs.' Resp. to Pl.'s SUMF ¶ 25. Alegis is Resurgent's general partner. Defs.' Resp. to Pl.'s SUMF ¶ 36.

**C. Post-Sale Collection Letters**

Two collection letters were sent to Tabiti in 2011. In April 2011, LVNV assigned Tabiti's debt for collection purposes to Northland Group, Inc. ("Northland"). Defs.' SUMF ¶ 15, ECF No. 174; Pl.'s Resp. to Defs.' SUMF ¶ 15. Northland sent a letter addressed to Tabiti in Country Club Hills, IL ("Country Club Hills"). Pl.'s Resp. to Defs.' SUMF ¶ 16. The letter listed the outstanding balance as $11,734.86. Defs.' SUMF ¶ 15 (citing Decl. of Lance Black 2, ECF No. 174-5 Ex. A). It also stated that "[b]ecause of interest that may vary from day to day, the amount due on the day you pay may be greater." *Id.* ¶ 18 (citing Decl. of Lance Black 4, ECF No. 174-5 Ex. B). In December 2011, LVNV assigned Tabiti's debt to Financial Recovery Services, Inc. ("FRS") for collection purposes. Pl.'s Resp. to Defs.' SUMF ¶ 19; Defs.' SUMF ¶ 19. FRS sent Tabiti a second collection letter dated December 30, 2011 to the same Country Club Hills

9

address; the letter listed the outstanding balance as $12,108.97.  Decl. of Brian Bowers 4,  ECF No. 174-6 Ex. B; Pl.'s Resp. to Defs.' SUMF ¶¶ 20, 21.  The letter contained a statement similar to the first letter, stating that the amount due may be "greater" on the day you pay.  Pl.'s Resp. to Defs.' SUMF ¶ 22.

Neither Northland nor FRS received notice that the letter was returned as undeliverable.  Pl.'s Resp. to Defs.' SUMF ¶ 24.  The parties read Tabiti's deposition testimony as creating a fact issue on whether he received the letters.  *See id.* ¶ 25 (citing same portions of Tabiti Dep. on disputed proposition).  If there is a genuine dispute, it concerns only the letter dated December 30, 2011.  Tabiti testified that he recalled receiving telephone calls and letters from the defendants, but he did not keep the letters.  Tabiti Dep. 30:14-31:12, ECF No. 164-1.  Defendants' attorney showed him the letters dated April 20, 2011 and December 30, 2011, from Northland and FRS respectively.  Tabiti testified that he did not recall seeing the letter from FRS.  *Id.* at 33:6–15.  Regarding the December 30, 2011, letter, Tabiti initially testified similarly, *id.* at 32:1.  This exchange followed:

> Q. . . . Have you ever seen [the letter dated December 30, 2011,] before, recall ever seeing it before?
>
> A. Yeah, I may have seen it, but I don't recall. Just receiving this letter now.
>
> Q. I'm sorry?
>
> A. I said I don't recall seeing it. I may have seen it, but I don't recall seeing it.
>
> Q. So you think you may have seen it or –
>
> A. No.
>
> Q. No?
>
> A. Uh-uh.

10

Tabiti Dep. 32:2-12.

### D. State Court Suit Against Tabiti and Affidavit of Indebtedness

Acting through Resurgent, LVNV retained a law firm to collect the debt Tabiti

purportedly owed.  Defs.' Resp. to Pl.'s SUMF ¶ 65; *see also id.* ¶¶ 37, 39 (Resurgent "reviews

and approves" affidavit of indebtedness, and Resurgent employees sign affidavit of

indebtedness).  The firm filed a complaint (*see* Pl. App. 20, ECF No. 164-20) against Tabiti on or

about November 28, 2012, in Cook County Circuit Court.  Pl.'s Resp. to Defs.' SUMF ¶ 25;

Defs.' SUMF ¶¶ 64–65.  An affidavit of indebtedness drafted by Resurgent was attached to the

complaint.  Defs.' Resp. to Pl.'s SUMF ¶¶ 67–68; Aff. Collect., ECF No. 164-21, Def. Ex. 7,

ECF No. 174-7.  The affidavit stated, among other things, that "all ownership rights were

assigned to, transferred to and became vested in Plaintiff, including the right to collect the

purchased balance owing of $10,463.51 plus any additional accrued interest."  Pl.'s Resp. to

Defs.' SUMF ¶ 28.  The affidavit of indebtedness averred that it is based upon "business records"

pertaining to the account sued upon.  Pl.'s Resp. to Defs.' SUMF ¶ 27 (quoting Pl.'s Aff. of

Indebtedness and Ownership of Account ¶¶ 31, 33, ECF No. 174-7.)  The business records "are a

compilation of the information provided upon acquisition and information obtained since

acquisition."  *Id.*  These records show that "the above stated amount is justly and duly owed by

the Defendant to the Plaintiff and that all just and lawful offsets, payments and credits to the

account have been allowed."  *Id.*

The complaint sought $2,092.70 in interest.  Pl.'s SUMF ¶ 74.  Defendants claimed that

they charged the Illinois statutory interest rate of five percent per year on the $10,463.51 charge-

off balance.  *See* Defs.' Resp. to Pl.'s SUMF ¶¶ 70–73.  For that amount of interest to be correct,

post-charge-off interest would need to have started to accrue on or around November 28, 2008,

11

rather than in August 2010 when Chase sold Tabiti's account. *Id.* ¶¶ 74–75. Defendants do not know the date used by LVNV's lawyers to calculate the date on which post-charge-off interest began to accrue, but it should have been August 31, 2010, according to defendants. *Id.* ¶¶ 74, 75. Tabiti hired counsel to defend him in the state collection lawsuit. *Id.* ¶ 76. LVNV voluntarily dismissed the collection action on March 13, 2013. *Id.* ¶ 77. Some collection suits brought in state courts against class members have proceeded to judgment. The parties' agreed to sample 13 such suits; judgment, including interest, was entered in 6 of them. Pl.'s Resp. to Defs.' SUMF ¶ 85.

### E. Proceedings Before This Court

Tabiti based his original complaint on a "robo-sign[ing]" theory under which affidavits of indebtedness were not based on a review of business records. Order 2, ECF No. 78 (Oct. 9, 2015). Tabiti abandoned this theory near the end of fact discovery in 2015 after defendants produced a Chase credit card statement for Tabiti's account. *Id.* He moved to amend his complaint to "add[ ] an allegation that the defendants impermissibly sought to recover post charge-off interest despite the lack of a statute or contract authorizing this type of interest" and to modify the proposed class definition accordingly. *Id.* The court granted Tabiti's motion with "the proviso that further delays in completing discovery will not be tolerated." *Id.* at 6.

Despite this proviso, protracted discovery regarding class certification matters and other issues followed. The parties stipulated that "there are 123 individuals whose debts were acquired by Defendants from Chase under identical terms and conditions as those terms and conditions in the Purchase and Sale Agreement that Defendants have produced as that which is related to Tabiti's account." *Tabiti*, 2017 WL 168176, at *2. In January 2017, the court certified a class defined as "(a) all natural persons with Illinois addresses; (b) to whom Defendants provided an

affidavit in the form represented by Appendix B; (c) concerning an alleged debt purportedly obtained from Chase; (d) where the definition of 'Unpaid Balance' in the Chase purchase agreement includes the statement 'excluding post charge-off interest;' (e) where such affidavit was provided on or before October 8, 2012 (one year prior to the filing of this action); and (f) on or before October 28, 2018 (20 days after the filing of this action)." *Id.* at *5; Pl.'s Resp. to Defs.' SUMF ¶ 84 (typographical error in commencement date).

Defendants moved the court to reconsider its certification order. They argued, as they did in opposition to the motion for class certification, that Tabiti was an unsuitable class representative because his claim was time-barred. The FDCPA's one-year statute of limitations, *see* 15 U.S.C. § 1692k, began to run, they argued, in 2011 when two collection letters were sent to Tabiti. Order 2, ECF No. 138 (May 16, 2017). Denying the motion to reconsider, the court explained that Tabiti's claim is not time-barred "because Tabiti's suit is based solely on the November 2012 collection suit and affidavit." *Id.* Regardless of any prior activity, the filing of the latter documents represents a discrete event that began a new "one-year limitations period" under the FDCPA. *Id.* (quoting *Gajewski v. Ocwen Loan Servicing*, 650 F. App'x, 283, 286 (7th Cir. 2016) for the proposition that "[c]ollection activity within or related to pending litigation may lead to new, and separately prosecutable, violations of the FDCPA").

### III. DISCUSSION

As already mentioned, the issues presented by the pending cross motions for summary judgment recur and overlap. Defendants argue that the claim Tabiti presses exceeds the scope of the class definition. The parties also disagree about whether the purchase agreement gave defendants the right to collect post-charge off interest. Defendants renew their argument that Tabiti's claims are time-barred, and they maintain that the *Rooker-Feldman* doctrine bars class

13

members against whom state judgments have been entered from obtaining relief under the FDCPA.

### A. Scope of Claims and Propriety of Class-Wide Treatment

Defendants point to the following language from the class definition to argue that plaintiff is pressing claims that are outside of its scope and for which a class could not have been certified: "(a) all natural persons with Illinois addresses; (b) to whom Defendants provided an affidavit in the form represented by Appendix B. . . ." Pl.'s Resp. to Defs.' Additional SUMF ¶ 84, ECF No. 184.[6] According to defendants, none of the affidavits in Appendix B reference a specific amount of accrued post-charge off interest. Defs.' Resp. to Pl.'s Mot. for Summ. J. ¶ 3, ECF No. 170. The defendants argue as follows: because "the class was not certified for any particular amount of interest," Tabiti's use of specific interest amounts is improper. This is so because determining the amount of interest owed to each class member requires an individual inquiry that will predominate over common questions. *See id.*

Defendants cite no authority in support of their argument, *see id.* at 2–3, and they conflate the method of proving a violation with the nature of the claim. This court described plaintiff's claim at class certification and recited the separate amounts of balance and interest defendants sought to collect from Tabiti in state court. *Tabiti*, 2017 WL 168176, at *1. The next sentence in the opinion reads, "Plaintiff claims that the Affidavit violates the FDCPA." *Id.* As this language shows, the amounts of balance and interest have been tied to the affidavit since class certification. *See id.*

---

[6] The redacted version of Pl.'s Resp. to Defs.' Additional SUMF can be found at ECF No. 188.

14

Accordingly, plaintiff's approach to proving an FDCPA violation at summary judgment cannot be a surprise to defendants. Based on the amount of interest sought, the date the suit was filed, and the charge-off date, Tabiti computes the date on which interest began to accrue at the stated five percent rate; his computation shows that interest began accruing on or around November 28, 2008. *See* Defs.' Resp. to Pl.'s SUMF ¶¶ 70–75. Defendants do not know how the law firm that filed the complaint against Tabiti arrived at the amount of interest, but the fact that the amount of interest accords with adding post-charge-off interest is undisputed. *See id.* ¶ 75. Defendants point to no evidence suggesting that post-charge-off interest was assessed against some class members but not others. *See id.* Hence there is no reason to believe that, to decide whether an FDCPA violation occurred, class members "will need to present evidence that varies from member to member." *Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 815 (7th Cir. 2012). Even if a class-member-by-member analysis were required, the instant briefing demonstrates that common questions raised by defendants' defenses and the implications of the purchase agreement predominate. Once those questions have been resolved, performing a computation similar to Tabiti's interest calculation appears to be a more or less mechanical task. *See Balderrama-Baca v. Clarence Davids & Co.*, 318 F.R.D. 603, 611 (N.D. Ill. 2017) (citing *Starr v. Chicago Cut Steakhouse, LLC*, 75 F. Supp. 3d 859, 872–75 (N.D. Ill. 2014)) (holding predominance and commonality requirements satisfied because individualized damages could be "mechanically calculated based on a review of company pay records").

**B. FDCPA Claims and Effect of the Purchase Agreement**

"Congress passed the [FDCPA] to eliminate the many evils associated with debt collection." *Bentrud v. Bowman, Heintz, Boscia & Vician, P.C.*, 794 F.3d 871, 874 (7th Cir.

2015).  Plaintiff relies on two prohibitions of the FDCPA.[7]  First, a debt collector violates the

FDCPA by falsely representing "the character, amount, or legal status of any debt." 15 U.S.C.

§ 1692e(2)(A).  The Seventh Circuit held in *Marquez v. Weinstein, Pinson & Riley, P.S.,* 836

F.3d 808, 809–11 (7th Cir. 2016) that "§ 1692e of the FDCPA covers the process of litigation,"

including, as was the case there, the contents of a complaint filed in state court.  This court

conducts "a fact-bound determination of how an unsophisticated consumer would perceive the

statement."  *Id.* at 812 (citing *McMillan v. Collection Prof'ls Inc.*, 455 F.3d 754, 759 (7th Cir.

2006)); *see also Gammon v. GC Servs. Ltd. P'ship*, 27 F.3d 1254 (7th Cir. 1994).  Section 1692f,

which plaintiff also cites, makes it an unfair debt collection practice to "attempt to collect . . . .

any amount . . . unless such amount is expressly authorized by the agreement creating the debt or

permitted by law."  An FDCPA plaintiff may recover statutory damages in the absence of proof

of actual damages.  *Bartlett v. Heibl*, 128 F.3d 497, 499 (7th Cir. 1999).

Resolution of the merits of the FDCPA claims here, the parties agree, turns on the legal

effect of the purchase agreement between Chase and Sherman Originator III.[8]  If the purchase

agreement did not give defendants the right to collect post-charge-off interest, the averments that

defendants had business records showing that they had "the right to collect the purchased balance

---

[7] Tabiti also cites the FDCPA's prohibition of the use of "any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer."  § 1692E(10).  He cites no Seventh Circuit authority construing this provision, however, and the court finds reaching it to be unnecessary.  *See* ECF No. 167 at 14.

[8] Plaintiff devotes a considerable portion of his brief to arguing that LVNV qualifies as a debt collector under the FDCPA after *Henson v. Santander Consumer USA Inc.*, 137 S. Ct. 1718 (2017).  *See* Pl.'s Mem in Supp. of Mot. for Summ. J. 14–19, ECF No. 167; *see also* 15 U.S.C. § 1692a(6) (defining "debt collector" under the FDCPA).  LVNV does not discuss whether it qualifies as a debt collector at all in its response.  *See* ECF No. 170.  LVNV has therefore waived the issue.  *Palmer v. Marion Cty.*, 327 F.3d 588, 597–98 (7th Cir. 2003) ("[A]rguments not presented to the district court in response to summary judgment motions are waived") (citing *Laborers' Int'l Union of N. Am. v. Caruso*, 197 F.3d 1195, 1197 (7th Cir. 1999).  Defendants object to certain paragraphs of plaintiff's fact statement on which plaintiff relies to argue that LVNV is a debt collector.  The court overruled those objections in the text of Part I.B, *supra*.  In light of LVNV's waiver and authority plaintiffs cite finding LVNV to be a debt collector based on the same evidence, this court resolves this issue for plaintiff.  *See Torres v. LVNV Funding, LLC*, 2018 WL 1508535, at *4–5 (N.D. Ill. Mar. 27, 2018).

owing . . . plus any additional accrued interest" were false.  Aff. Collect., ECF No. 164-21, Def. Ex. 7

Defendants take a plain language approach to the issue.  *See* Defs.' Resp. to Pl.'s SUMF at 5–6.  General principles of contract law govern the interpretation of assignments.[9]  *Stilwell v. Am. Gen. Life Ins. Co.*, 555 F.3d 572, 577 (7th Cir. 2009).  Because the purchase agreement includes a merger clause, the court looks to its text to determine the parties' intent.  *See Lansing v. Carroll*, 868 F. Supp. 2d 753, 763 (N.D. Ill. 2012).

As defendants point out, the purchase agreement transferred "all of Seller's 'rights, title and interest in and to eligible Charged-off Accounts.'"  ECF No. 164-16 at 7.  Since Chase retained the right to assess post-charge-off interest, though it did not, defendants reason that they acquired that right and so could charge interest retroactively.  They acknowledge that the definition of "Unpaid Balance" expressly "exclude[ed] post charge-off interest," *id.*, but they maintain that the exclusion is intended to set the purchase price of accounts on the date they are sold.  *See id.* (wherein price was "determined by multiplying the total Unpaid Balances of the Charged-off Accounts as of the File Creation Date being sold by Purchase Price").

Defendants' analysis ignores the defined and capitalized term "Charged-off Account" in which "all rights, title, and interest was transferred."  *Id.*  The term "Charged-off Account" means "an Account which Seller has charged off the Unpaid Balance as uncollectible. . . ."  *Id.* at 5.  And in the definition of the term "Account," there is a reference to the Unpaid Balance definition and its exclusion of post-charge-off interest: "Account" means "a consumer account

---

[9] The purchase agreement contains a choice of law clause in favor of Delaware law.  Purchase Agreement ¶ 28.  The parties do not discuss Delaware law or identify any unique aspects of Delaware law bearing on the general contract interpretation principles applied here.

established or maintained for a Cardholder . . . program, including the Unpaid Balance owed by the applicable Cardholder." *Id.* at 4.

If these interlocking definitions leave any doubt about the parties' intentions, the purchase agreement also states that "[p]urchaser's primary purpose in purchasing Charged-off Accounts is to attempt legal collection of the Unpaid Balances owed on such Charged-off Account[s]." ECF No. 164-16 at 7. Another provision of the agreement clarifies the meaning of the transfer language in § 2(b), specifying rules that apply in "the event that Seller fails or refuses to offer for sale the Unpaid Balances as required by Section 2(b)." *Id.* at 21. This language makes clear that what is being sold is the right to collect the defined "Unpaid Balance," which excludes post-charge-off interest. Reading the purchase agreement in its entirety, it becomes clear, then, that the rights and interests transferred by the purchase agreement excludes the right to collect post-charge-off interest. Thus, Chase did not transfer any right it had to collect post-charge interest. *See Pine Top Receivables of Illinois, LLC v. Banco De Seguros del Estado*, 2013 WL 677986, at *3–4 (N.D. Ill. Feb. 25, 2013) (plain language of contract partially assigned debt); *In re Doctors Hosp. of Hyde Park, Inc.*, 373 B.R. 53, 68 (Bankr. N.D. Ill. 2007) (partial assignment of right to receive certain payments based on agreement's plain language).

Furthermore, it is undisputed on the present record that Chase waived its right to collect post-charge-off interest at the times relevant here, as Chase's corporate representative testified in 2012. *See* Defs.' SUMF ¶¶ 47–48 (objections overruled *supra*). Plaintiff suggests that federal regulations requiring Chase to continue sending bank statements may have played a part in its decision. *See* 12 C.F.R. § 226.5(b)(2) (2009) (current version at 12 C.F.R. § 1026.5(b)(2) (2012)). Regardless, "[a]ny party to a contract may waive any terms, conditions or other rights

18

that it might have under the contract." *Chicago Coll. of Osteopathic Med. v. George A. Fuller Co.*, 719 F.2d 1335, 1342 (7th Cir. 1983) (Illinois law; approving of jury instruction).

As applicable here, "waiver 'arises when conduct of the person against whom waiver is asserted is inconsistent with any intention other than to waive it.'" *Sabrina Roppo v. Travelers Commercial Ins. Co.*, 869 F.3d 568, 570 (7th Cir. 2017) (Illinois law) (quoting *Home Ins. Co. v. Cincinnati Ins. Co.*, 821 N.E.2d 269, 282 (2004)); *see also In re Argon Credit, LLC*, 2019 WL 169315, at *9–10 (Bankr. N.D. Ill. 2019) (substantially the same under Delaware law). An assignee takes an assignment of a "debt subject to any existing waivers or defenses." *Terech v. First Resolution Mgmt. Corp.*, 854 F. Supp. 2d 537, 541–42 (N.D. Ill. 2012) (citing *Olvera v. Blitt & Gaines, P.C.*, 431 F.3d 285, 288 (7th Cir. 2005) and *Cmty. Bank of Greater Peoria v. Carter*, 669 N.E.2d 1317, 1319 (Ill. App. Ct. 1st. Dist. 1996)). Thus even if defendant had transferred the right to collect any post-charge-off interest, Chase's waiver of post-charge-off interest precluded defendants from collecting it. *See id.* (holding, in FDCPA action, that debt collector took assigned debt subject to waiver of post-charge-off interest); *McDonald v. Asset Acceptance LLC*, 296 F.R.D. 513, 526–27 (E.D. Mich. Aug. 7, 2013), *vacated after settlement*, *McDonald v. Asset Acceptance LLC*, 2016 WL 7325655 (E.D. Mich. June 23, 2016) (holding debt collector did not obtain the right to collect post-charge-off interest under similar contract because Chase previously waived post-charge-off interest).

Summing up, the plain language of the purchase agreement did not transfer to defendants the right to collect post-charge-off interest. And even if it did, Chase waived the right to collect post-charge-off interest, and defendants were bound by that waiver. Accordingly, summary judgment is appropriate for plaintiff as to liability.

### C. Statute of Limitations

Defendants again argue at summary judgment that Tabiti's claims are time-barred. The FDCPA states that a suit must be brought "within one year from the date on which the violation occurs." 15 U.S.C. § 1692k(d). Under defendants' analysis of the issue, the letters dated April 20, 2011 and December 30, 2011 "put on notice in 2011 that interest was accruing on [Tabiti's] Chase credit card post-charge off," making this lawsuit, filed in 2013, untimely. Resp. to Pl.'s Mot. Summ. J. 7–8, ECF No. 170.

Defendants argue that the FDCPA does not adopt a discovery rule for accrual of claims and that the continuing violation doctrine cannot be used to save Tabiti's claims. *See id.* On the discovery rule, they cite a Third Circuit case adopting the "occurrence rule" under the FDCPA. Under the occurrence rule, a claim accrues on the date "the injury actually occurred" rather than the date the plaintiff knew or should have known of the injury (the "discovery rule"). *Rotkiske v. Klemm*, 890 F.3d 422, 425 (3d Cir. 2018) (citing *G.L. v. Ligonier Valley Sch. Dist. Auth.*, 802 F.3d 601, 613 (3d Cir. 2015)). The Supreme Court recently granted *certiorari* in the Third Circuit case. *Rotkiske v. Klemm*, No. 18-3828, 2019 WL 886893 (Feb. 25, 2019). In the second case defendants cite, a sister district court applied the Seventh Circuit's reasoning in *Gajewski v. Ocwen Loan Servicing*, 650 F. App'x 283, 286 (7th Cir. 2016) (unpublished) to hold that the continuing violation doctrine could not be used to bootstrap time-barred FDCPA claims, based on phone calls, by tying them to a timely claim based on the filing of a suit to collect a debt. *Bjerke v. Messerli & Kramer, P.A.*, 2017 WL 2869957, at *3–5 (W.D. Wis. July 5, 2017). The district reasoned that "even if 'collection activity within or related to pending litigation may lead to new, and separately prosecutable, violations of the FDCPA,' that does *not* mean that 'new

20

violations will resurrect prior, untimely claims based on a 'continuing violation' theory.'" *Id.* at *3 (quoting *Gajewski*, 650 F. App'x at 286-87) (emphasis in original).

Defendants continue to talk past this court's analysis of the limitations issue, which does not depend on whether the occurrence or discovery rule applies to the FDCPA. As this court explained on reconsideration of class certification, "The continuing-violation doctrine is ultimately a red herring . . . because Tabiti's suit is based solely on the November 2012 collection suit and affidavit." Order 2, ECF No. 138 (May 16, 2017) (citing *Gajewski*, 650 F. App'x at 286). Tabiti reaffirms in the instant briefing now before the court briefing that his claims are based solely on the 2012 collections suit and affidavit. Pl.'s Reply 20. Several district courts in the Seventh Circuit have held that where a FDCPA claim is based on the filing of a lawsuit, the debtor's claim accrues when the suit is filed or the debtor is served. *Fajolu v. Portfolio Recovery Assocs., LLC*, 354 F. Supp. 3d 899, 902–03 (N.D. Ill. 2018) (collecting cases). *Bjerke* confirms this rule by treating the filing of a collection action in state court as a discrete FDCPA violation for which a new one-year period began to run. *See* 2017 WL 2869957, at *4–5. What this court said at reconsideration continues to apply at summary judgment: "even assuming Tabiti had notice of the FDCPA's violation in connection with the 2011 collection letters, defendants fail to explain how this would foreclose the commencement of a new limitations period in connection with the November 2012 lawsuit and affidavit. In short, the court's grant of Tabiti's motion for class certification stands regardless of whether *Gajewski* forbids the application of the continuing-violation doctrine in FDCPA cases." Order 3, ECF No. 138 (May 16, 2017).

### D. The *Rooker-Feldman* Doctrine

Finally, defendants contend that the *Rooker-Feldman* doctrine bars class members against whom judgments were entered in state court from bringing FDCPA claims.  *See Rooker v. Fid. Tr. Co.*, 263 U.S. 413, 415–16 (1923); *D.C. Cir. v. Feldman*, 460 U.S. 462, 486 (1983).  The Seventh Circuit recently explained the doctrine as follows:

> Lower federal courts are not vested with appellate authority over state courts. The *Rooker-Feldman* doctrine prevents lower federal courts from exercising jurisdiction over cases brought by state court losers challenging state court judgments rendered before the district court proceedings commenced.  The rationale for the doctrine is that no matter how wrong a state court judgment may be under federal law, only the Supreme Court of the United States has jurisdiction to review it.

*Jakupovic v. Curran*, 850 F.3d 898, 902 (7th Cir. 2017) (quoting *Sykes v. Cook Cty. Cir. Ct. Prob. Div.*, 837 F.3d 736, 741–42 (7th Cir. 2016)) (alterations in original).  Under the *Rooker-Feldman* doctrine, this court lacks subject matter jurisdiction over "federal claims [that] either 'directly' challenge a state court judgment or are 'inextricably intertwined' with one."  *Id*. (quoting *Taylor v. Fed. Nat'l Mortg. Ass'n*, 374 F.3d 529, 532 (7th Cir. 2004)).

Defendants submit that awarding FDCPA relief would be an impermissible collateral attack on state court judgments against class members to the extent the judgments award post charge-off interest.  As already explained, the FDCPA violation was complete upon the filing of the complaint's affidavit in state court.  *See Marquez*, 836 F.3d at 812 (differentiating between entry of judgments in state court and "communications that occurred in the context of litigation"); *Stone v. Wash. Mut. Bank*, 2011 WL 3678838, at *7 (N.D. Ill. Aug. 19, 2011).  In *Long v. Shorebank Development Corp.*, 182 F.3d 548, 555 (7th Cir. 1999), the Seventh Circuit held that the *Rooker-Feldman* doctrine did not bar an FDCPA claim that the defendants "falsely represented the character, amount, and legal status of the debt Long allegedly owed Shorebank

by presenting Long with a notice and serving her with a complaint stating she owed Shorebank money—a fact they knew to be untrue."

Just like the injury Long held was "distinct" from the state court's judgment, *id.*, the class members here complain of an injury flowing from the filing and service of a false complaint and affidavit in state court. Thus, the class members' FDCPA claims do not depend, as the state court judgments do, on the validity of the underlying debt, and so the FDCPA claims do not call for the rejection of the state court's judgments and are not intertwined with them. *Long*, 182 F.3d at 555–56; *Weldon v. Asset Acceptance, LLC*, 2011 WL 902018, at *4 (S.D. Ind. 2011); *Ramirez v. Palisades Collection LLC*, 2007 WL 4335293, *4 (N.D. Ill. Dec. 5, 2007). As the Seventh Circuit observed, the FDCPA plays an important role "particularly in the debt collection area in which judgments are overwhelmingly reached through forfeiture, and thus misleading or deceptive statements are more likely to influence the response of the defendant without ever coming to the attention of the court in any meaningful way." *Marquez*, 836 F.3d at 812. It is the influence of the complaint and affidavit on the state court defendant—who may well have relied on the false or misleading statement when he or she failed to appear—at which the FDCPA takes aim. *See id.* Because that injury is palpably distinct from the state court's judgment, *Rooker-Feldman* does not apply.

## IV. CONCLUSION

For the reasons stated, plaintiff's motion for partial summary judgment on liability is granted, and defendants' motion for summary judgment is denied.


Date:   March 27, 2019                    _____/s/_____
                                          Joan B. Gottschall
                                          United States District Judge

23